# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| **In Re:**<br>**Steven B. Cummings and**<br>**Laura Susanne Cummings,**<br><br>**Debtors.** | **Bankruptcy Case**<br>**No. 17-40043-JDP** |

## MEMORANDUM OF DECISION

**Appearances:**

Steven B. Cummings and Laura Susanne Cummings, Blackfoot, Idaho, *pro se*.

Steven L. Taggart, MAYNES TAGGART PLLC, Idaho Falls, Idaho, Attorney for Debtors.

Daniel C. Green, RACINE, OLSON, NYE, BUDGE & BAILEY, CHTD., Pocatello, Idaho, Attorney for creditor Northern Title Company.

Gary L. Rainsdon, Twin Falls, Idaho, Chapter 12 Trustee.

MEMORANDUM OF DECISION – 1

*Introduction*

Chapter 12[1] debtors Steven and Laura Cummings ("Debtors"), who were successful in achieving confirmation of their chapter 12 plan of reorganization, now object to the application filed by their former attorneys, Maynes Taggart PLLC ("Counsel"), for Court approval of compensation for their services and reimbursement of expenses. After a hearing, and having given due consideration of the application, Debtors' objection, and the other matters of record, the Court concludes the fee and cost request should be approved.

*Background and Facts*

Acting through Counsel, Debtors commenced this Chapter 12 case on January 20, 2017. Dkt. No. 1. With Counsel's help, after Debtors proposing multiple reorganization plans which were vigorously opposed by their major creditors, and after several hearings before the Court, on November 17, 2017, Debtors were finally able to achieve confirmation of a

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532.

MEMORANDUM OF DECISION – 2

plan. Dkt. No. 111. At bottom, that plan staved off foreclosure efforts by their secured creditors, and endorsed Debtors's strategy to orderly market and sell their considerable real estate holdings to pay their debts, and to thereby preserve their considerable, valuable equity in the lands for their benefit. *See* Second Amended Chapter 12 Plan, Dkt. No. 71. As Chapter 12 cases generally go, to the Court, this was a fairly complex case with unusual facts, and the results were a "win-win" for Debtors and their creditors.

In connection with formalizing confirmation of Debtors' plan, on November 10, 2017, Counsel filed an Application for Compensation – 11 U.S.C. § 330 ("the Application"), along with the supporting affidavit of attorney Steven L. Taggart, Debtors' principal attorney in the case. Dkt. Nos. 107, 108. The Application sought approval, and payment through the confirmed plan, of "a total amount of $21,429.00 consisting of $24,532.50 in fees and $1,482.22 in expenses, for a total of $26,014.72 minus a courtesy discount of $4,585.72." Application at ¶ 4, Dkt. No. 107. The Affidavit included a comprehensive, detailed description of all services provided to

MEMORANDUM OF DECISION – 3

Debtors, computed the amount charged for compensation at $170 per hour for attorney time, and $75 per hour for paralegal time, and reflected that a total of 180.9 hours had been expended by Counsel's personnel in this case. Affidavit at ¶¶ 3-4 and Exs. A-C, Dkt. No. 108.

Unfortunately, on December 29, 2017, Counsel filed a Motion to Withdraw (the "Motion") as Debtors' attorneys, wherein Counsel indicated that Debtors had requested that its representation be terminated and that "the relationship between counsel and Debtors is [not] repairable." Motion at ¶¶ 3-4, Dkt. No. 115. On January 5, 2018, Debtors, acting *pro se*, filed with the Court a lengthy letter with attachments responding to Counsel's Motion to Withdraw and objecting to the Application. Dkt. No. 117.

On January 17, 2018, the Court conducted a hearing on the Application and the Motion, at which Debtors, Mr. Taggart, Chapter 12 trustee Gary Rainsdon, and counsel for the principal secured creditor, appeared. *See* Minute Entry, Dkt. No. 118. After hearing from the parties,

MEMORANDUM OF DECISION – 4

the Court granted the Motion and authorized Counsel to withdraw.[2] The Court took the issues raised by Debtors' objection to the Application under advisement; this decision addresses those issues.[3]

## *Analysis and Disposition*

The Code provision applicable to this dispute specifies that,

> In a chapter 12 . . . case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

Section 330(a)(4)(B). The "other factors" referenced in this provision require the Court to consider the nature, extent and value of the attorneys' services; the time spent; the rates charged; whether the services were necessary; and whether the amount sought is reasonable compared to the

---

[2] An order formalizing this ruling was entered on January 2, 2018, Dkt. No. 25. Alhtough the Court encouraged Debtors to retain substitute counsel to help them complete their considerable further duties under the confirmed plans, they have since filed a notice indicating they will be representing themselves. Dkt. No. 120.

[3] This decision constitutes the Court's findings of fact and conclusions of law. Rules 7052; 9014.

MEMORANDUM OF DECISION – 5

facts of the case and in comparison to amounts charged by comparably skilled practitioners in nonbankruptcy cases. § 330(a)(3). Debtors' attorneys may also receive reimbursement for actual, necessary expenses. § 330(a)(1)(B). The bankruptcy court has broad discretion in measuring the reasonableness of an estate professional's compensation request. *Wechsler v., Macke Intern. Trade, Inc. (In re Macke Intern. Trade, Inc.)*, 370 B.R. 236, 253 (9th Cir. BAP 2007); *Holland & Hart, LLP v. Oversight Comm. Under Confirmed Plan of Liquidation (In re Hopkins Northwest Fund LLC)*, 567 B.R. 590, 595-96 (D. Idaho 2017); *In re Castorena*, 270 B.R. 504, 515 (Bankr. D. Idaho 2001).

Debtors' letter objecting to Counsel's fee request, with attachments, spans 48 pages in length. In the 12-page narrative portion of the letter, among other things, Debtors target Mr. Taggart's alleged lack of diligence; his failure to communicate effectively with them, or to follow their instructions; the quality of his counseling and advice concerning important aspects of the case; what Debtors consider to have been Mr. Taggart's many mistakes in his submissions to the Court, and his "unauthorized"

MEMORANDUM OF DECISION – 6

communications with others involved in the case; Debtors' dissatisfaction with the terms of the plan they proposed for confirmation; the process they selected to sell the real property, and those to be employed to assist in the sales; Mr. Taggart's erroneous judgments concerning events in state court litigation; that Mr. Taggart was away on vacation during the summer of 2017; and Debtors' general dissatisfaction with Counsel's representation and billings. Letter at 1-12, Dkt. No. 117. Debtors conclude that Counsel's fees "should not have exceeded $7,000.00 . . . for which we have already paid $1,831.00" and that "Mr. Taggart has cost us thousands of Dollars for his failures to perform as agreed." *Id.* at 12.[4] While Debtors seem genuinely disturbed about what they perceive to have been the general lack of benefit from their relationship with Counsel, and the cost and value of the services provided, after a review of the record, and based upon its considerable involvement in this case over many months, the Court would

---

[4] The dozens of pages of attachments to Debtors' Letter include excerpts from Counsel's billings statements and copies of documents filed in their bankruptcy case. *Id.* at 13-48. They were less than helpful to the Court in understanding or documenting Debtors' concerns.

MEMORANDUM OF DECISION – 7

Case 17-40043-JDP  Doc 124  Filed 02/23/18  Entered 02/23/18 10:26:46  Desc Main
                            Document      Page 8 of 12

make the following observations.

In the Court's experience, at the outset of their case, Debtors' efforts to reorganize under Chapter 12 presented some serious challenges. While any Chapter 12 case can be contentious, and this one certainly was, Debtors found themselves to be, in common parlance, "land-rich and cash-poor." They owned multiple large and valuable parcels of agricultural real estate, encumbered by millions of dollars in debt to several institutional and other creditors. Because they could not pay the mortgage debt, which was fully secured, the creditors aggressively sought to foreclose. Debtors resisted in state court, but were unsuccessful. As a result, Debtors were faced with the prospect of losing their considerable equity in the land if it were liquidated via forced-sales.

Utilizing the tools provided to farm debtors in Chapter 12, Mr. Taggart, through several attempts, helped Debtors confirm a plan that allowed them substantial additional time to sell the land, first privately, and then via an auction company, while secured creditors were stayed from collection and awaited payment. Indeed, based upon the record, it

MEMORANDUM OF DECISION – 8

appears Debtors successfully liquidated a portion of their land holdings through private sales, and used the proceeds to satisfy large amounts of debt.  It also appears they are on course toward additional land sales and, hopefully, the successful completion of creditor payments and a conclusion of their plan.  To the Court, this is an extremely positive outcome for Debtors when compared to the looming prospect of loss of the equity in their land through foreclosure sheriff's sales.

Counsel and Mr. Taggart have comprehensively described the legal services provided to Debtors, and the time spent doing so, in their itemized submissions to the Court.  While Debtors invite the Court to microscopically review these services and time entries, the Court's review of the billings has caused it no significant concerns deserving individual comment or criticism.  Indeed, nature of the services provided was unremarkable in this context, and the amount of time spent by Counsel in successfully confirming a plan in this case is solidly within the range of reasonableness.

Moreover, Counsel's hourly rates charged for lawyer and paralegal

MEMORANDUM OF DECISION – 9

services are, in the Court's experience, at the very lowest end of the range of rates in play for debtor's reorganization lawyers practicing in this Court. While some of Counsel's counterparts are charging upwards to $300 per hour to represent farm debtors in reorganization cases, the Court can not recall any of Counsel's peers currently charging rates lower than Counsel in this case.

After considering all of the factors required by the Code, simply put, Counsel's compensation and expenses, totaling less than $25,000, seems eminently reasonable to the Court in light of the complexities of the issues in this case, the value of Debtors' assets, and the amount of debt owed by Debtors, and the other circumstances of this case.

To the Court, Debtors' complaints about their obviously strained relationship with Counsel do not justify a reduction in a fee that is already a modest, discounted amount. Admittedly, the number and nature of the disputes Debtors allege to have encountered in their dealings with Counsel could have served as the basis for severing their attorney-client relationship, something Debtors eventually did do. The Court

MEMORANDUM OF DECISION – 10

acknowledges that, sometimes, attorneys and their clients are simply unable to effectively communicate and cooperate.

However, under these facts, it would be unjust to allow Debtors to postpone the decision to terminate Counsel until their plan was confirmed, and then assault Counsel's request for reasonable compensation. While Debtors insist they have been abused by Counsel, on this record, it appears that they also received significant benefits from Counsel's professional services. In the exercise of its discretion, the Court declines Debtors' invitation to conduct the sort of hyper-technical review of the wisdom and quality of Counsel's advice and services they now seek. Because there is no legal reason nor objective basis evident in this case to do so, the Court will not reduce Counsel's fee request.

*Conclusion*

The Application will be granted and the amounts requested by Counsel for compensation and expenses will be approved, with any payments to be made in accordance with the terms of Debtors' confirmed plan. Counsel shall submit a separate order for entry by the Court. The

MEMORANDUM OF DECISION – 11

Chapter 12 Trustee should approve the form of order.

Dated: February 23, 2018

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 12